[L.A. No. 30372. In Bank. Mar. 8, 1976.]

HARRY SKOPP et al., Plaintiffs and Appellants, v.
RICHARD WEAVER et al., Defendants and Respondents.

## COUNSEL

Barrymore, Stevens & Bonham, Edward L. Lascher and Wendy Cole Wilner for Plaintiffs and Appellants.

Brelsford, McMahon & Butcher and Timothy F. McMahon for Defendants and Respondents.

## OPINION

**TOBRINER, J.**—Plaintiffs' second amended complaint alleges that defendants, who are real estate brokers and salesmen,[1] were plaintiffs' agents to facilitate the sale of plaintiffs' property. Plaintiffs allege that defendants breached their duty as agents by not revealing to plaintiffs that plaintiffs' land had been sold to the state for taxes; defendants then arranged to terminate the period of redemption and acquire for themselves the property for a fraction of its true value. These allegations, plaintiffs maintain, state a cause of action for breach of fiduciary duty.

Defendants' demurrer rests primarily on the contention that plaintiffs' general allegations of agency are not averments of ultimate fact. Defendants also contend that the specific averments of plaintiffs' complaint fail to show that defendants accepted plaintiffs' alleged offer

---

[1]We use the term "realtor" to refer to a person acting either as a real estate broker or a real estate salesperson.

for a contract of agency; furthermore, defendants argue, plaintiffs' failure to allege that defendants possessed discretionary authority demonstrates that defendants were not agents and thus owed no fiduciary duty to plaintiffs. The trial court sustained the demurrer without leave to amend and entered judgment of dismissal accordingly.

Since the issue before us turns on whether the complaint states, or can be amended to state, a cause of action, we set forth more fully plaintiffs' pertinent allegations, beginning with the first cause of action. It preliminarily alleges that plaintiffs, who lived in Los Angeles, owned certain real property in the Santa Ynez Valley. They listed that property for sale through the office of William McKillop, a local real estate broker. Defendants were real estate brokers and salesmen doing business as Live Oak Realty. Paragraph VII avers that "At all times mentioned herein the general practice in the Santa Ynez Valley was that any such listing constituted an offer to all realtors, brokers and salesmen in the Santa Ynez area for a unilateral contract, the acceptance of which is manifested by an agreement to sell to a buyer ready, willing and able to buy the listed property."

Both McKillop and defendants advertised the property. Paragraph X of the first cause of action alleges that on or about April 24, 1969, defendants "as agents for the plaintiffs, contracted to sell said property and accepted a deposit on the purchase price, thereby accepting the above referenced offer."[2] Yet the agreement between plaintiffs and the prospective buyers procured by defendants was not consummated.

Shortly thereafter, in May of 1969, defendants discovered that plaintiffs' property had been sold to the state on June 30, 1965, for nonpayment of delinquent taxes.[3] (See Rev. & Tax. Code, §§ 3351, 3436.) Plaintiffs retained, however, a right to redeem that property for five years from the date of sale and thereafter until the state disposed of the land. (See Rev. & Tax. Code, §§ 3511, 3707.)

---

[2]Plaintiffs' prior complaint proceeds to identify the prospective purchasers as Sam and Doris Wisnon, to state that they offered to buy the property for $23,000, and to explain that the negotiations failed when the Wisnons refused to accept certain easements on the property. The second amended complaint omits these allegations.

[3]Plaintiffs do not plead how defendants learned of plaintiffs' tax delinquency. At this point in the action—defendants have yet to file an answer—plaintiffs probably do not know how defendants acquired that information.

The complaint further alleges that plaintiffs were at all times unaware of the tax delinquency. Defendants did not inform plaintiffs of this defect in plaintiffs' title, but concealed that information until the five-year redemption period expired. Defendants then, in July of 1971, "caused the tax collector of the County of Santa Barbara to offer said property for public sale, and caused said notice of sale to be published in the [*sic*] Santa Barbara County, well knowing that the plaintiffs resided outside of said county and the notice would not reach them."[4] On August 17, 1971, defendants Weaver and Moon purchased the property for the minimum requested bid of $7,500.

The first cause of action concludes that defendants breached a fiduciary duty owing to plaintiffs as agents, and prays for return of the realty, compensatory damages, and punitive damages. Plaintiffs' second cause of action asserts that by reason of defendants' conduct plaintiffs lost a sale of the property, and thereby incurred additional damages of $5,000. The third and final cause of action characterizes defendants' conduct as a wilful infliction of emotional distress, and seeks damages of $100,000.

To set forth a cause of action plaintiffs must state facts sufficient to establish that defendants bore a fiduciary duty to plaintiffs and that defendants violated that duty.[5] Defendants do not seriously contend that the allegations failed to allege the *breach* of the duty. The complaint alleges that defendants concealed vital information from plaintiffs and, contrary to plaintiffs' interests, used that information to acquire plaintiffs' property for less than its true value. Undoubtedly such allegations state a cause of action for the breach of a fiduciary duty. The issue before us, thus, is whether or not defendants did bear a fiduciary duty to plaintiffs.

Plaintiffs posit defendants' fiduciary duty upon the allegations in paragraphs X, XXIII, and XXIV that defendants were plaintiffs' agents. ■ Pointing out that a demurrer admits the truth of all properly pleaded allegations of fact (see, e.g., *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 99 [101 Cal.Rptr. 745, 496 P.2d 817];

---

[4]Revenue and Taxation Code section 3701 requires the tax collector to mail notice of the sale to the last known address of the last assessee of the property. Plaintiffs do not allege whether they received that notice.

[5]Although defendants demurred also on the ground that specific paragraphs of the complaint were uncertain, the trial court order sustaining the demurrer rests solely upon the ground that the complaint failed to state a cause of action.

*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]), plaintiffs contend that their general allegations of agency suffice to establish, for purposes of this appeal, that defendants are the agents of plaintiffs.

Defendants, in response, first maintain that allegations of agency do not constitute averments of ultimate fact, but conclusions of law, and are thus insufficient to avoid a demurrer. Admitting that they have no authority to support the proposition that an allegation of agency is a conclusion of law, defendants nevertheless seek to distinguish the numerous cases holding a finding of agency to be a finding of fact (see, e.g., *Hale* v. *Wolfsen* (1969) 276 Cal.App.2d 285, 290 [81 Cal.Rptr. 23]; *Trane Co.* v. *Gilbert* (1968) 267 Cal.App.2d 720, 726 [73 Cal.Rptr. 279]) on the ground that all such cases involve review of a trial court's findings, not a complaint's allegations. Defendants have overlooked both that courts, in determining whether an allegation is one of ultimate fact, consider pleadings in the same manner as findings (*McCarthy* v. *Brown* (1896) 113 Cal. 15, 17-18 [45 P. 14]) and that numerous cases have held a pleading of agency an averment of ultimate fact. (*Farr* v. *Bramblett* (1955) 132 Cal.App.2d 36, 47 [281 P.2d 372];[6] *Phillips* v. *Reserve Life Ins. Co.* (1954) 128 Cal.App.2d 540, 546 [275 P.2d 554]; *General Mill & Lbr. Co.* v. *Robertson* (1932) 126 Cal.App. 118, 120 [14 P.2d 327]; *Cullinan* v. *Mercantile Trust Co.* (1926) 80 Cal.App. 377, 383 [252 P. 647]; see 3 Witkin, Cal. Procedure (2d ed.) p. 1948.)

▆ Defendants secondly rely on the principle that specific allegations in a complaint control over general allegations (see 3 Witkin, Cal. Procedure (2d ed.) pp. 2006-2007 and cases there cited); they contend that the specific averments of paragraphs VII and X of the complaint overcome plaintiffs' general allegations of agency, rendering the complaint defective.

Defendants point to the language of paragraph VII which, it will be recalled, stated that plaintiffs' listing with McKillop constituted an offer to all realtors of the Santa Ynez area "for a unilateral contract, the acceptance of which is manifested by an agreement to sell to a buyer ready, willing and able to buy the listed property." Defendants interpret this as an offer for a contract of agency. Then, turning to paragraph X, defendants observe that although plaintiffs there allege that defendants contracted to sell the property and accepted a deposit, "thereby

---

[6]Overruled on other grounds in *Field Research Corp.* v. *Superior Court* (1969) 71 Cal.2d 110 [77 Cal.Rptr. 243, 453 P.2d 747].

accepting the above referenced offer," plaintiffs did not allege the existence of an agreement with a ready, willing and able buyer. Since the conduct described in paragraph X did not respond to the terms of the offer in paragraph VII, defendants conclude that the offer was not accepted, and hence that no contract of agency arose.

A basic rule commands us to construe the allegations of a complaint liberally in favor of the pleader. (See Code Civ. Proc., § 452; *Buxbom* v. *Smith* (1944) 23 Cal.2d 535, 542 [145 P.2d 305]; *Motor City Sales* v. *Superior Court* (1973) 31 Cal.App.3d 342, 345 [107 Cal.Rptr. 280]; 3 Witkin, Cal. Procedure (2d ed.) pp. 1999-2001 and cases there cited.) Yet defendants here ask us to do the very opposite: we are to construe the specific allegations of agency narrowly and *against* the pleader to overcome the general allegations of agency. We are asked thereby to find a contradiction in the allegations of the complaints between the general averment of agency and the specific language of paragraph X.

Paragraph X states that defendants "*as agents for the plaintiffs*, contracted to sell said property and accepted a deposit on the purchase price, thereby accepting the above referenced offer." (Italics added.) The italicized language can reasonably be interpreted to indicate that the defendants were previously the agents of plaintiffs when they entered into the contract with the prospective buyers and accepted the deposit, or that defendants' acts in so dealing with plaintiffs' property manifested defendants' acceptance of the obligations of agency and thus created the agency relationship; under either interpretation the final execution of an agreement with a ready, willing and able buyer was not a condition precedent to the creation of the agency.

The foregoing interpretations of paragraphs VII and X represent a more reasonable reading of the complaint than that advanced by defendants. The assertion of defendant that the agency began only with the execution of an agreement with a ready, willing and able buyer does violence to common sense because that very event often *ends* the agency. The acceptance of a contract with such a buyer is the objective of the agency, and the fulfillment of that purpose may terminate the relationship.

Applying the principle of liberal construction set forth above, we must reject the defendants' proposed interpretation that acceptance of the offer stated in paragraph VII precedes the creation of defendants' agency. We interpret the complaint, instead, to assert an agency created

or existing before the time when defendants contracted with the prospective purchasers and accepted a deposit.[7] Thus the allegations of paragraphs VII and X do not contradict plaintiffs' positive and clear general averment that defendants were plaintiffs' agents.

■ This conclusion brings us to defendants' further contention: that plaintiffs have not clearly alleged facts explaining how the agency relationship between them and defendants arose.[8] We have already noted, however, that an allegation of agency as such is a statement of ultimate fact. Consequently further allegations explaining how this fact of agency originated become unnecessary.

■ Finally, defendants contend that the complaint is insufficient because it nowhere alleges that plaintiffs conferred discretionary authority upon defendants. Lacking such authority, defendants maintain, they are not agents.

Defendants' contention errs in assuming that *authority* to exercise discretion is essential to the creation of an agency. (See Rest.2d Agency, § 3, coms. a and c.) Principals frequently engage agents to perform ministerial tasks as to which they lack discretionary authority. Indeed, the realtor furnishes the classic exemplar of this mode of agency; as described in Seavey, Agency (1964) page 50: "He is an agent, but with authority to speak for the principal almost at the vanishing point."

The cases upon which defendants rely for the proposition that a realtor lacking discretionary authority is not an agent do not apply here. Those decisions concern the issue whether a realtor can recover a promised commission although he lacks a real estate broker's or salesman's license (see *Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 8 [106 Cal.Rptr. 761, 507 P.2d 65]

[7]In a dual agency, "[t]he agent . . . is under no duty to disclose, and has a duty not to disclose to one principal, confidential information given to him by the other." (Rest.2d Agency, § 392, com. b.) Thus defendants are in error in contending that an interpretation of the complaint which found them to be plaintiffs' agents at the time defendants contracted with the prospective buyers would place them in an untenable conflict of interest by compelling them to reveal matters told them in confidence by the buyers.

[8]Under the form of multiple listing agreement employed in many areas, a broker on the multiple listing is by virtue of the agreement an agent of the seller. (See 1 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975) § 4.8.) Plaintiffs do not allege that an express multiple listing agreement was in effect in the Santa Ynez Valley at the time of the transaction here at issue, but apparently maintain that by the custom of the profession in that area the multiple listing of a property, even in the absence of express agreement, created an agency relationship between the seller and the realtor.

and cases there cited) or whether he can, without disclosing his dual agency, collect a commission from both buyer and seller (*Clark* v. *Allen* (1899) 125 Cal. 276, 278 [57 P. 985]; *Kennedy* v. *Johnson* (1930) 109 Cal.App. 662, 665-666 [293 P. 698]; *Carothers* v. *Caine* (1918) 38 Cal.App. 71, 74 [175 P. 478];[9] *King* v. *Reed* (1914) 24 Cal.App. 229, 234-235 [141 P. 41]). But it is one thing to permit a realtor to retain a commission earned when his nondisclosure does not risk injury to the seller (see Rest.2d Agency, § 391, com. d), and quite another to permit him to conceal material facts and thereby acquire a profit at the seller's expense.

The issue presented by the instant complaint is not one of licensing or harmless nondisclosure, but of actual injury and unconscionable profit. As the court pointed out in *Hale* v. *Wolfsen, supra,* 276 Cal.App.2d 285, 290-291, "whenever the acts or omissions of a [realtor] causes injury in a real estate transaction, there is a compelling reason" to find him an agent. (See 1 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975) § 4.5.) No California decision has held a realtor exempt from fiduciary obligation to the seller when the realtor has in fact acted to the seller's detriment.[10]

We conclude that the allegations of plaintiffs' first cause of action, incorporated by reference into their second and third causes of action, adequately plead agency, fiduciary duty, and breach of duty, and thus state facts sufficient to entitle plaintiffs to relief.[11] We recognize that plaintiffs' complaint may be uncertain in some respects: the alleged acceptance stated in paragraph X could be clarified to show its responsiveness to the offer stated in paragraph VII; the relationship between that offer and acceptance and the allegations of agency could be made more certain by more precise pleading. But these uncertainties do not vitiate the essence of plaintiffs' complaint, the allegations of agency,

[9]Overruled on other grounds in *Butler* v. *Solano Land Co.* (1928) 203 Cal. 231 [263 P. 530], as stated in *McConnell* v. *Cowan* (1955) 44 Cal.2d 805, 812 [285 P.2d 261].

[10]In *Smith* v. *Howard* (1958) 158 Cal.App.2d 343 [322 P.2d 1034], a broker told his mother of a buyer's offer; she made a higher offer which the seller accepted. The court held the broker did not breach a fiduciary duty to the *buyer*. Whatever the correctness of that decision, it has no bearing on the existence of fiduciary duty between the realtor and the seller.

[11]The three causes of action differ principally in terms of the relief sought by plaintiffs: the first cause of action seeks recovery of the property and damages for fraud; the second seeks recovery of lost profits; the third damages for emotional distress. Since a general demurrer cannot be sustained if plaintiffs' complaint states facts entitling them "to any relief either at law or in equity" (*Kittle* v. *Lang* (1951) 107 Cal.App.2d 604, 611 [237 P.2d 673]), we need not discuss these different theories of recovery.

fiduciary duty, and breach of duty. Consequently, although such allegations might support a demurrer for uncertainty (Code Civ. Proc., § 430, subd. 9), they cannot justify the sustaining of a general demurrer (Code Civ. Proc., § 430.10, subd. (f), let alone an order sustaining such a demurrer without leave to amend. ■ As we stated in *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726], "It is axiomatic that if there is a reasonable possibility that a defect in the complaint can be cured by amendment or that the pleading liberally construed can state a cause of action, a demurrer should not be sustained without leave to amend."

■ In sum the complaint alleges that a realtor concealed from his principal the fact that the principal's land had been sold to the state for taxes and that the realtor managed to make an unconscionable profit by buying the land at a tax sale. Such conduct, if it occurred, cannot be condoned. Defendants demur on the ground that a specific allegation in the complaint overcomes the general allegation of agency. But the specific allegation itself alleges an agency relationship, and, liberally construed, creates no contradiction. Surely the allegations of facts as disturbing as these suffice, and, indeed, cry out for exposition at trial. The superior court therefore erred in sustaining the defendants' general demurrer.

The judgment is reversed with directions to the trial court to overrule the general demurrers and to rule on the points presented by the special demurrers.

The judgment is reversed.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.